## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JEAN V., | Case No.: 1:19-cv-00240-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Respondent. | |

Pending is Petitioner Jean Vazquez's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On May 18, 2016, Petitioner Jean Vazquez ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 15.) Petitioner alleged disability beginning June 1, 2016. (*Id.*) Her claims were denied initially on October 20, 2016 and then again on reconsideration on January 31, 2017. (*Id.*) On March 15, 2017, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner testified at a hearing held on February 15, 2018 in Boise, Idaho. (*Id.*) Impartial vocational expert Anne T. Arrington also appeared and testified at the hearing. (*Id.*)

On July 26, 2018, ALJ David Willis issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her alleged onset date through the date of his decision. (AR 24.) Petitioner timely

**MEMORANDUM DECISION AND ORDER – 1**

requested review from the Appeals Council on September 18, 2018. (AR 154). On April 30,

2019, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the

final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted administrative remedies, Petitioner filed this case. She contends that

"[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the

Social Security Act, nor is it in accordance with the law, nor is it in accordance with the

evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is

disabled from performing substantial gainful activity." Pet. for Review 2 (Dkt. 1). Petitioner

argues that the ALJ erred by ignoring and improperly weighing objective medical evidence, by

improperly discounting Petitioner's credibility, and by assigning an RFC unsupported by the

record. *See generally* Pet.'s Mem. (Dkt. 18). Petitioner asks that the case be reversed and

remanded for a direct award of benefits. *See id.* at 19–20.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are

conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER – 2**

than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER – 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2016 through the date of the ALJ's decision.  (AR 17.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that, as of the date of his decision, Petitioner had the following severe impairments: "inflammatory arthritis, osteoarthritis, lumbar degenerative disc disease, and obesity."  (AR 17.)

**MEMORANDUM DECISION AND ORDER – 4**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (AR 19–21.)

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ found that Petitioner had the RFC to perform:

> light work as defined in 20 CFR 404.1567(h) except she can lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. She can sit up to 6 hours per 8-hour workday, and stand and/or walk up to 6 hours per 8-hour workday. She requires a sit/stand option as follows: after standing and/or walking 45 minutes, she would need to sit for 15 minutes before resuming standing and/or walking. She can occasionally stoop, kneel, and climb ramps/stairs. She can never crouch, crawl, or climb ladders/ropes/scaffolds. She can occasionally reach overhead, and she can frequently reach in all other directions. She can frequently handle and finger. She must avoid all exposure to unprotected heights and moving mechanical

parts/machinery. She cannot operate a motor vehicle as part of employment. In addition to normal breaks, she will be off task 5% during an 8-hour workday.

(AR 21.)  Based on this RFC, the ALJ further found that Petitioner was not capable of performing any past relevant work.  (AR 22–23.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

The ALJ found that through the date of the decision, and considering age, education, work experience, and RFC, Petitioner could perform the requirements of representative occupations such as "cashier (seated)," "arcade attendant," and "mail clerk."  (AR 23–24.)  The ALJ further found that these jobs exist in significant numbers in the national economy.  (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "has not been under a disability, as defined in the Social Security Act," from the alleged onset date through the date of the decision.  (AR 24.)

**B.     Analysis**

Petitioner raises three primary issues.  First, the ALJ ignored and improperly weighed objective medical evidence.  Second, the ALJ improperly discredited her subjective testimony.  Third, the ALJ erred by assigning an RFC that is not supported by the record.  *See generally* Pet.'s Mem. (Dkt. 18).  Each argument will be addressed in turn.

**MEMORANDUM DECISION AND ORDER – 6**

**1.   The ALJ Erred by Ignoring Objective Medical Evidence.**

Petitioner contends the ALJ erred by ignoring significant relevant objective evidence,

contrary to SSR 96-8.  Per that SSR,

> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
> - Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms…;
> - Include a resolution of any inconsistencies in the evidence as a whole; and
> - Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

SSR 96-8P at *7, 1996 WL 374184 (July 2, 1996).  More broadly, SSR 96-8 provides that "[t]he

RFC assessment must be based on *all* of the relevant evidence in the case record," including,

inter alia, the claimant's "[m]edical history" and the "[e]ffects of symptoms, including pain, that

are reasonably attributed to a medically determinable impairment."  *Id.* at *5 (emphasis in

original).

Petitioner contends the ALJ's RFC analysis "focused primarily on objective evidence of

Petitioner's inflammatory arthritis and treatment while ignoring substantial evidence of

Petitioner's other medically determinable impairments."  Pet.'s Br. 8 (Dkt. 18).  She takes issue

with the ALJ stating "[m]oreover, her objective findings remained stable and unremarkable over

the entire period at issue," (AR 22), because she says the ALJ did not discuss which objective

evidence was stable and unremarkable.  She argues the ALJ's RFC assessment could not be

based on substantial evidence if he did not discuss any reasoning for ignoring significant

objective evidence.

Specific evidence of Petitioner's argument is contained in a quote she offers from a May

2014 medical record, two years prior to her alleged onset date, in which rheumatologist Dr. Kelly

**MEMORANDUM DECISION AND ORDER – 7**

Timmons noted "if we make the diagnosis of rheumatoid arthritis this does not explain all of her pain.  She appears to have trochanteric bursitis as well as chronic back pain that are separate issues."  (AR 273.)  Dr. Timmons was not able to identify any active joint inflammation at that time but noted a high CCP antibody titer and family history of rheumatoid arthritis.  (AR 269.)  As a result, he urged Petitioner to follow up if her symptoms worsened and he suggested she might benefit from attending a pain clinic.  (*Id.*)

In October 2015, Petitioner visited her primary care physician, Dr. Jay H. Hansen, who documented her complaint of progressively-worsening joint pains, particularly in her hands.  (AR 572.)  He also noted enlargement of the MCP and PIP joints in both hands upon examination.  (AR 573.)  As a result of Petitioner's complaints and his exam, Dr. Hansen referred Petitioner to a rheumatologist (other than Dr. Timmons) for a second opinion.  (AR 572.)

In February 2016, still some three months prior to her alleged onset date, Petitioner presented to rheumatologist Dr. Gregory J. Wilson.  (AR 314.)  In addition to noting objective risk factors for rheumatoid arthritis, Dr. Wilson also noted "[m]ultiple fibromyalgia tender points positive" on exam (AR 316) and he indicated "concern[] about a component of fibromyalgia" that "would explain her widespread pain" (AR 317).  With regard to Petitioner's complaint of foot pain, he "suspect[ed] this is more mechanical as she has obvious pes planus which likely is contributing to her symptoms," but based on her having been seen by multiple providers for this issue, he did not think referral to an orthopedic podiatrist would be helpful.  (*Id.*)

At a follow-up visit with Dr. Wilson a month later, he assessed her for joint pain, vitamin D deficiency, and fibromyalgia and he recorded in his note "I feel this patient has fibromyalgia."  (AR 311.)

**MEMORANDUM DECISION AND ORDER – 8**

The ALJ did not find that fibromyalgia was a severe impairment.  His decision does not discuss fibromyalgia at all.  He does not refer to Petitioner's visits to Dr. Wilson from prior to her alleged onset date, and the only reference to a September 16 follow-up visit (after the alleged onset date) quotes a portion of a record saying Petitioner "was in no acute distress, and her mood and affect were appropriate."  (AR 22, citing AR 346–348.)  Dr. Wilson's September 2016 record does not mention fibromyalgia by name.

Petitioner contends that "by ignoring substantial evidence of fibromyalgia, instead relying on normal hand ultrasounds related to inflammatory arthritis, the ALJ misunderstood the root cause of Petitioner's complaints related to widespread pain, particularly in her hands…. The ALJ provided no analysis regarding Petitioner's fibromyalgia diagnosis or treatment…. Accordingly, the ALJ missed the mark when he brushed past the fibromyalgia diagnosis by focusing instead on normal studies for inflammatory arthritis."  Pet.'s Br. 9–10 (Dkt. 18).

More broadly, Petitioner contends the ALJ "seemingly abandoned analysis of Petitioner's other severe impairments and the substantial objective evidence once he reached his conclusion that the inflammatory arthritis was not supported by objective evidence."  *Id.* at 10.  She argues the ALJ failed to differentiate her osteoarthritis locations which included her cervical spine, lumbar spine, feet, and knees, all of which cause separate limitations.  She also recounts x-ray imaging of her feet taken in 2014, 2015, and 2017 which she contends show progressive foot osteoarthritis.  She disputes the ALJ's assertion that the "objective evidence remained stable and unremarkable" in light of such x-rays, and she faults the decision for providing no analysis regarding her subjective foot complaints or the corresponding objective evidence.  She also notes the ALJ does not discuss how progressive foot osteoarthritis would allow standing and walking for 45 minutes at a time.

**MEMORANDUM DECISION AND ORDER – 9**

Petitioner then goes through the same process with respect to cervical spine x-rays and lumbar spine x-rays, detailing objective records that she says cannot fairly be described as "unremarkable." A 2016 x-ray documents "[a]dvanced degenerative disc disease C5–C6." (AR 333.) A December 2016 MRI record identifies issues throughout her lumbar spine (AR 537–538) with the concluding impression reached by Dr. Adam S. Maxfield of "[m]ultilevel degenerative changes of the lumbar spine." (AR 538.) None of her physicians described this MRI, Petitioner retorts, as unremarkable. Instead, she quotes Dr. Wilson's May 2017 report that that her "[i]maging is consistent with degenerative changes. She has failed PT. If she fails interventional pain management, she may need to consider evaluation by neurosurgery." (AR 508.) Petitioner also highlights that the ALJ "provided no analysis of how objective evidence of lumbar degeneration which led to escalating treatment was unremarkable or would allow Petitioner to complete an eight-hour work day at light exertional levels." Pet.'s Br. 12 (Dkt. 18).

Finally, Petitioner draws upon a May 2017 MRI of her right knee that was conducted because of chronic knee pain. That MRI revealed osteoarthritis as well as a "[c]omplex tear of the body and posterior horn of the lateral meniscus." (AR 505.) Although the ALJ "briefly acknowledged" this MRI, Petitioner contends he "made no effort to discuss how a meniscal tear and osteoarthritis, in conjunction with the entire record, would allow the Petitioner to stand and or walk for 45 minutes at one time." Pet.'s Br. 12 (Dkt. 18.)

For his part, Respondent posits that the ALJ reasonably considered the objective evidence. The "only records cited by [Petitioner] that the ALJ allegedly 'ignored' predate the alleged onset date of June [1,] 2016," and medical records predating the alleged onset date, he contends, are of limited relevance. Respt.'s Br. 3 (Dkt. 20). Respondent argues that an ALJ need only explain why "significant probative evidence" has been rejected and the records

**MEMORANDUM DECISION AND ORDER – 10**

Petitioner cites do not qualify.  Thus, he argues, there was no need for the ALJ to discuss the records Petitioner highlights.

Respondent next contends that a doctor indicating, prior to the alleged onset date, that a claimant may have fibromyalgia is inapposite to the issues to be reviewed by this Court.  He cites to SSR 12-2p, 2012 WL 3104869 (July 25, 2012), as support for his position as to the nature of the evidence a claimant must present to establish that she has a medically determinable impairment of fibromyalgia.  He says Petitioner did not produce such evidence here.

Respondent's remaining argument frames Petitioner's position as merely arguing for a different interpretation of the objective evidence.  Respondent correctly notes that if the ALJ's decision is supported by substantial evidence, then the supportability of an alternative interpretation of the evidence is irrelevant.  He stresses that in disability cases it is the claimant's burden to prove she is disabled under the law, rather than Respondent's burden to prove she is not disabled.

Although Respondent correctly states the law, his arguments applying the law to the facts of this case do not persuade.  Petitioner has emphasized specific, objective, medical records that are highly relevant and yet the ALJ either overlooks or gives minimal (and inadequate) consideration and discussion to such evidence.  Respondent is mistaken to say that the only records Petitioner cited as examples of the ALJ ignoring relevant evidence are records that predate the alleged onset date – Petitioner refers expressly to imaging studies taken after such date.  (AR 535, 393, 537–538, 504.)  Although the ALJ did refer to some of these records, he did not discuss them thoroughly and he tended to ignore the relevant objective evidence highlighted in them by Petitioner.

**MEMORANDUM DECISION AND ORDER – 11**

As to fibromyalgia, the ALJ concluded that Petitioner had not established fibromyalgia as a medically determinable impairment. Petitioner argues that Dr. Wilson's records satisfy SSR 12-2p and therefore do establish the fact of fibromyalgia, but the Court disagrees.[1] However, whether fibromyalgia was a medically determinable impairment is not a primary issue. Rather, the issue is whether the ALJ erred by not discussing fibromyalgia in his decision. The Court concludes the failure to address the question of fibromyalgia was error. Fibromyalgia warranted mention in the ALJ's decision because it was implicated in a record just a few months prior to the alleged onset date and because of its inescapable relevance to Petitioner's subjective allegations of pain.

More fundamentally, and as a separate instance of error, the ALJ's decision is not supported by substantial evidence in that it fails to discuss significant probative evidence. The ALJ recited that Petitioner "was in no acute distress, and her mood and affect were appropriate" at one visit as evidence that "near the alleged onset date, objective medical evidence was unremarkable and not consistent with her complaints of severe and persistent joint pain with swelling." (AR 22.) He went on to say that "her objective findings remained stable and unremarkable over the entire period at issue," again citing medical records that "she remained alert, oriented, and in no acute distress. Further, her mood and affect were always appropriate." (*Id.*)

But the ALJ did not adequately support his finding that objective findings were "stable" or "unremarkable," if indeed it was possible to do so. Petitioner set out multiple examples of

---

[1] In addition to other reasons not stated here, SSR 12-2p requires "[a]t least 11 positive tender points on physical examination" and Dr. Wilson's record vaguely notes "*[m]ultiple* fibromyalgia tender points positive" (AR 316, emphasis added) without establishing that there were at least 11 such points.

**MEMORANDUM DECISION AND ORDER – 12**

significant, probative, objective, record evidence that is at odds with the ALJ's terse findings, including progressive foot osteoarthritis and evidence of lumbar degeneration.

It is not the ALJ's duty to discuss every piece of evidence in the record – even every relevant piece of evidence.  But it is the ALJ's duty to support his decision with record evidence, and he did not do so adequately here.  Petitioner has established that the ALJ's decision is not supported by substantial evidence in that he has not sufficiently explained his finding that Petitioner's objective findings were "stable and unremarkable."

Importantly, this is not a reweighing of the evidence to reach a different conclusion than the ALJ did, by either Petitioner or by the Court.  Indeed, the Court draws no conclusion regarding whether the ALJ's findings could have been supported by the record had they been discussed more thoroughly.  Rather, the error is that the ALJ made an express finding that Petitioner's objective findings were stable and unremarkable, but he did not adequately discuss the evidence relevant to such finding and Petitioner has shown through argument that there is substantial evidence tending to undermine such finding.  For his decision to survive scrutiny, the ALJ needed to address the significant probative evidence that was inconsistent with his finding. He did not do so, and his decision is therefore in error.

**2.  The ALJ Erred by Improperly Discounting Petitioner's Credibility.**

Next, Petitioner argues the ALJ erred in his treatment of Petitioner's testimony regarding the severity of her symptoms.  To reject a claimant's credibility, the ALJ must offer "specific, clear and convincing reasons" for doing so.  *Trevizo*, 871 F.3d at 678.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Regarding Petitioner's credibility, the ALJ found that Petitioner's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21–22.)  He referred to medical records from September 2016 and January 2017 that showed no joint inflammation as well as various other negative signs for inflammatory arthritis.  He also said, "her pain decreased about 80% with injections and physical therapy," citing records from January and March 2017.  (AR 22, citing AR 517, 637.)

However, in the first of these records Petitioner's primary care physician Dr. Hansen wrote that:

> Most recently, she has noticed increasing discomfort in the back.  MRI was obtained in December which showed degenerative changes.  She has established with physical therapy and pain management.  They have injected the back and she has noticed improvement.  She is noticing some degree of discomfort in the hips. She still has whole body pain.  Her legs will hurt when she walks.  She is noticing some pain in the fingers.  She notes stiffness in the low back time to time….

(AR 517.)  The ALJ chose to highlight the statement that Petitioner had "noticed improvement," but completely left out any discussion of the context of such a statement – a context that contained multiple statements that were completely supportive of the "intensity, persistence and limiting effects of her symptoms…."

In the second record cited by the ALJ, from the observations of Dr. Bradley P. Bretz, Petitioner was described as having had "2 sets of diagnostic medial branch blocks L2-L5 bilaterally.  With each procedure she received greater than 80% pain reduction and the duration of the relief was appropriate for the local anesthetic used." (AR 637.)  Under a heading labeled "Plan" on the same page, this record notes that Petitioner "will be scheduled for radio frequency ablation L2-L5 bilaterally…." (*Id.*)

**MEMORANDUM DECISION AND ORDER – 14**

Petitioner makes a cogent criticism of the ALJ's reliance upon the indication of "80% pain reduction" because he makes no mention of the fact that such pain reduction resulted from pain relieving injections given to her as part of a diagnostic procedure used to assess her candidacy for a different, longer-term procedure.  That is, she argues "[t]he injections were not intended to permanently relieve Petitioner' pain, rather they were a diagnostic tool to determine if nerve ablation would be effective."  Pet.'s Br. 16 (Dkt. 18).  To make that point clear, Petitioner refers to Dr. Bretz's June 2017 follow-up record containing the same "80% pain reduction" language the ALJ quoted but which then continues on with the results of the nerve ablation procedure:

> She has had 2 sets of diagnostic medial branch blocks L2-L5 bilaterally. With each procedure she received greater than 80% pain reduction and the duration of the relief was appropriate for the local anesthetic used.  March 9, 2017 she had radio frequency ablation L2-L5 bilaterally.  *Her pain is about the same that it was prior to the procedure.*

(AR 648 (emphasis added).)  Petitioner also testified at the hearing that the procedure did not improve her pain.  (AR 41–42.)

In this setting, the ALJ's finding that "it was reported her pain decreased about 80% with injections and physical therapy" is not a clear and convincing reason for discounting Petitioner's credibility.  The citations offered in support of the finding include no detail whatsoever regarding the effectiveness of any physical therapy, and context makes clear that the "80% pain reduction" was for a diagnostic procedure that ultimately led to a more long-term procedure that was ineffective.

Respondent argues that the ALJ offered several valid reasons to discount Petitioner's testimony regarding the severity of her subjective symptoms.  He contends that the objective evidence is inconsistent with her subjective complaints and that physical examinations were

**MEMORANDUM DECISION AND ORDER – 15**

largely unremarkable, neither of which is a clear and convincing reason given the ALJ's cursory and incomplete (if not simply inaccurate) discussion of the objective evidence, as discussed above.

Respondent also contends that Petitioner's limited treatment history undermines the reliability of her complaints, focusing on a treatment gap from January 2018 through the date of the ALJ decision, July 26, 2018. However, the ALJ hearing was on February 15, 2018 and the hearing record was to be closed as of March 1, 2018. (AR 15, 684.) Petitioner submitted additional records – which the ALJ cited in his decision – on February 28, 2018. These records included treatment records from early January 2018, less than two months prior to the close of the record in this case. The fact that Petitioner submitted no treatment records dated after January 2018 is not a clear and convincing reason to discount her credibility, as the record closed only two months later.[2]

Next, Respondent contends that Petitioner's symptoms improved with certain treatments. Respt.'s Br. 6–7 (Dkt. 20). But, as discussed above, the ALJ's finding in this regard was not supported. However, Respondent also argues that he may point out additional support for the ALJ's position on appeal. *Warre v. Comm'r*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). He cites records saying that Petitioner did "well" with her pain medications, which resulted in increased activity level and improvement in activities of daily living. (AR 654, 661.) He also cites a January 2018 record documenting Petitioner's claim that medication was "managing" her pain. (AR 659.)

---

[2] Nor does the Court agree that Petitioner waived the issue of whether the lack of treatment records is a clear and convincing reason for discounting her credibility, as Respondent argues. Respt.'s Br. 6 (Dkt. 20). Petitioner adequately raised the issue of whether her credibility was improperly discounted in her opening memorandum.

**MEMORANDUM DECISION AND ORDER – 16**

Such records do say what Respondent contends they say.  Nonetheless, they are not reliable evidence that Petitioner was malingering or that her pain otherwise was not as limiting as she claimed.  Without any quantification or detailed analysis, relative phrases such as "*increased* activity level," "*improvement* in activities of daily living," and "*managing* pain" simply cannot fill in the gaps left in the ALJ's discussion.  The cited records offer nothing in the way of details regarding the duration, magnitude, or significance of such increases or improvements, but other records do provide such details, details which support Petitioner's claim.  Moreover, the records also discuss claims of pain and functional limitations.  Additionally, where the precise issue is whether the ALJ provided a clear and convincing reason to discount Petitioner's credibility, Respondent's combing the record after the fact for additional support is not a substitute for the requirement that the ALJ considered such records.  Again, the issue is that the ALJ did not provide a sufficiently thorough explanation of his reasoning – assuming it was possible to do so.

Finally, Respondent notes that the ALJ relied on the medical opinion evidence by the non-examining state disability determination services physicians, both of whom opined Petitioner was not disabled.  The ALJ said that "those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians."  (AR 22.)  He also anchored their opinions against his other justifications for discounting Petitioner's credibility, rather than letting them stand on their own, saying "those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision)."  (*Id.*)

These medical opinions did not result from examining Petitioner and thus any reliance on them related to the question of Petitioner's credibility is already somewhat tenuous.  This fact, combined with the fact that the ALJ himself linked their opinions to the other reasons for

**MEMORANDUM DECISION AND ORDER – 17**

discounting Petitioner's credibility – every one of which has been found lacking by this Court – means that this, too, fails to pass muster as a clear and convincing reason to discount Petitioner's credibility.  The ALJ did not provide any clear and convincing reasons to discount Petitioner's credibility and his decision is subject to reversal on that basis.

The Court is mindful that the ALJ was not required to accept Petitioner's subjective allegations about the severity or limiting effects of her pain or other symptoms.  But the ALJ was required to provide specific, clear and convincing reasons for rejecting such allegations.  He did not.  Thus, the ALJ's decision to discount Petitioner's subjective testimony was reversible error.

Separately, even if the ALJ had provided clear and convincing reasons to discount Petitioner's credibility, the decision would still be reversed and remanded as a result of the improper weighing of the objective evidence properly, as discussed above.

### 3. Because the ALJ Erred in Evaluating Objective Evidence and Petitioner's Subjective Allegations of Pain, the Assigned RFC Was Not Supported by Substantial Evidence.

The last issue Petitioner raises relates to the RFC.  Petitioner contends the ALJ erred by assigning an RFC not supported by the record.  The Court has found error with the ALJ's weighing objective evidence and with his weighing of Petitioner's subjective testimony. Therefore, Petitioner has already established that the RFC is not supported by substantial evidence and a detailed analysis is unnecessary.  That is, the other errors in the ALJ's decision necessarily mean that the RFC is not supported by substantial evidence.

### 4. Remand Is Necessary to Consider Whether Petitioner Is Disabled.

Finally, Petitioner argues the case should be remanded for an immediate award of benefits rather than for further proceedings.  However, several of the ALJ's errors stemmed from a lack of explanation that, conceivably, could be supported by explanation without changing the

**MEMORANDUM DECISION AND ORDER – 18**

outcome of the ALJ's decision.  That is, subsequent consideration on remand may result in a finding of either disability or non-disability.  Therefore, the Court does not decide here whether Petitioner is disabled.  The case will be remanded for further proceedings.

## IV. **CONCLUSION**

Petitioner has shown that the ALJ committed reversible legal error regarding the weighing of objective medical evidence and the evaluation of Petitioner's testimony.  These errors undermine the ALJ's findings regarding Petitioner's RFC.  Accordingly, the ALJ's decision is not supported by substantial evidence and it will be reversed and remanded for further proceedings consistent with this decision.

## V. **ORDER**

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: March 31, 2021

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 19**